# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| UNILOC USA, INC., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., | **Case No. 2:16-cv-642-JRG** <br><br> **LEAD CASE** |
| APPLE INC., | Case No. 2:16-cv-0638-JRG |
| BLACKBERRY CORPORATION, ET AL., | Case No. 2:16-cv-0639-JRG |
| KAKAO CORPORATION, | Case No. 2:16-cv-0640-JRG |
| LINE EURO-AMERICAS CORP., ET AL., | Case No. 2:16-cv-0641-JRG |
| VIBER MEDIA S.A.R.L., | Case No. 2:16-cv-0643-JRG |
| VOXERNET LLC, | Case No. 2:16-cv-0644-JRG |
| WHATSAPP, INC., | Case No. 2:16-cv-0645-JRG |
| AOL, INC. | Case No. 2:16-cv-0722-JRG |
| BEETALK PRIVATE LTD. | Case No. 2:16-cv-0725-JRG |
| FACEBOOK, INC. | Case No. 2:16-cv-0728-JRG |
| GREEN TOMATO LIMITED | Case No. 2:16-cv-0731-JRG |
| SONY INTERACTIVE ENTERTAINMENT LLC | Case No. 2:16-cv-0732-JRG |
| TANGOME, INC. D/B/A TANGO | Case No. 2:16-cv-0733-JRG |

Defendants.

## JOINT MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

Plaintiffs, Uniloc USA, Inc. and Uniloc Luxembourg, S.A., and Defendants Samsung Electronics America, Inc.; Apple Inc.; BlackBerry Corporation; BlackBerry Limited; Kakao Corporation; LINE Euro-Americas Corp., et al.; Viber Media S.a.r.l.; Voxernet LLC; WhatsApp, Inc.; AOL, Inc.; Facebook, Inc.; Green Tomato Limited; Sony Interactive Entertainment LLC; and TangoMe, Inc. d/b/a Tango (collectively, "the Parties") respectfully request that the Court enter a Protective Order in this case. [1]

---

[1] Defendant BeeTalk Private Ltd.'s ("BeeTalk") deadline for responding to Plaintiffs' Complaint is December 14, 2016.  To the extent BeeTalk is required to take a position on this motion at this time, BeeTalk joins with Defendants.

The Parties have reached agreement on most terms of the Protective Order.  However, the Parties were unable to reach agreement on two provisions:  (1) whether the Protective Order should include a bar on advising or counseling clients on the acquisition of patents, patent applications, or the right to sublicense any such patent or patent applications ("Patent Acquisition Bar"), and (2) the use of personal computers to take notes during source code review ("Source Code Note-Taking Computer").  The Parties have met and conferred in good faith and are unable to resolve these issues. The Parties' Disputed Protective Order proposed is attached as Exhibit A. Each Party's position on the two disputed provisions is set forth below.

## I.    ARGUMENT WITH RESPECT TO DISPUTED PROVISIONS

### A.    Patent Acquisition Bar – Section 6(c)

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| [Plaintiff submits that Defendants' proposal for an "acquisition bar" is not warranted in this case, and Defendants have failed to provide any good cause showing the need such a bar at this time.] | Absent the written consent of the Producing Party, any attorney representing Plaintiffs who is permitted to and in fact receives Defendant's materials designated "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" and directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), in accordance with this Order, shall not be involved, directly or indirectly, the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the subject matter of the asserted patents, e.g., generating and transmitting instant voice messages over a network.  These prohibitions shall begin when access to the HIGHLY SENSITIVE TECHNICAL MATERIALS are first received by the affected individual, and shall end one (1) year after the settlement and/or dismissal of the Producing Party Defendant from this action or the final non-appealable termination of this action. |

### 1.      Plaintiffs' Position:

Uniloc respectfully submits that the Patent Acquisition Bar proposed by Defendants is an unnecessary addition to the Protective Order, which expressly provides that "[a]ll Protected Material shall be used solely for this case…and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition…or any business or competitive purpose or function."  Exhibit A at ¶6(a).  As such, the Protective Order already prohibits counsel from using any Protected Materials for the purpose of advising any party on the acquisition of a patent.

Defendants nevertheless propose that counsel for Plaintiffs be prohibited from advising any party about the acquisition of a patent broadly relating to the subject matter of the asserted patents if Plaintiff's counsel has viewed any of Defendants' technical information in this matter—and not merely technical information directly relating to the patent to be acquired. Defendants' proposal would further prohibit Plaintiffs' counsel from being "involved, directly or indirectly" in such acquisitions—again without regard to whether Plaintiffs' counsel had actually viewed technical information directly relating to the patent to be acquired.  As such, Defendants' Patent Acquisition Bar would constitute an automatic disqualification of Plaintiffs' counsel from such acquisition activities without regard to whether any particular harm might be prevented by the proposed disqualification.

As Section 6(a) of the Proposed Protective Order already expressly prohibits Counsel from using Protected Material for the purpose of patent acquisitions, it is unclear how the proposed Patent Acquisition Bar would serve any purpose if not to disqualify Plaintiffs' counsel from direct or indirect involvement in patent acquisitions where such disqualification would not be warranted based on the material actually viewed by the attorney.  In fact, Defendants Apple, Blackberry and Samsung have all recently agreed to a Protective Order before this Court that did

not include, or even propose, such a Patent Acquisition Bar.  *See, e.g.,* Case No. 2:13-cv-01112-JRG, Dkt. 144 at 6 (Joint Motion for Entry of a Protective Order); Dkt. 151 at 5 (Protective Order).

Therefore, Uniloc respectfully requests that the Court deny Defendants' request for a Patent Acquisition Bar.

## 2.    Defendants' Position:

The parties dispute whether the Protective Order should include a patent acquisition bar. Defendants submit that it should be included.  Defendants proposed patent acquisition bar prohibits recipients of a Defendant's highly sensitive technical material from being involved in "the acquisition of patents (including patent applications), or the rights to any such patents or patent applications with the right to sublicense, relating to the subject matter of the asserted patents."   Such a provision is appropriate to forbid "outside counsel from advising clients whether to acquire a patent closely related to the subject matter of this litigation."   *EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306, 2013 WL 2181584, at *4-*5 (N.D. Cal. May 20, 2013).

The considerations supporting imposition of a patent acquisition bar are the same as those supporting the patent prosecution bar that Uniloc has agreed to include in this Protective Order. Specifically, both bars seek to mitigate the risk that a recipient of confidential technical information will inadvertently use that information when drafting claims for a patent application (prosecution bar) or when advising on the purchase of patents (acquisition bar).  *See, e.g.,* *Inventor Holdings, LLC v. Google, Inc.*, Civil Action No. 1:14-cv-00186 (GMS), 2014 WL 4369504, at *1 (D. Del. Aug. 27, 2014) (where "the plaintiff is a non-practicing entity, it is difficult to envision circumstances in which the <u>inadvertent</u> disclosure of highly confidential information would not be a risk about which to be concerned when the issue being discussed is the future acquisition of patents") (emphasis in original); *Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-cv-1677, 2014 WL 5804334, at *7 (W.D. Wash. July 7, 2014) ("Patent acquisition

creates the same risks of inadvertent use as patent prosecution, in that litigation counsel may consciously or subconsciously use their knowledge of . . . confidential information to advise a client on which patents to acquire."); Doc. 78, *Trustees of Boston University v. Apple Inc.*, Case No. 1:13-cv-11575-PBS (D. Mass. Nov. 15, 2013) , at *5 ("The concerns justifying a patent acquisition bar for counsel also extend to trial experts and consultants.").

In *E-Contact Technologies, LLC v. Apple Inc.*, this Court noted that plaintiff's acquiescence to a prosecution bar establishes the necessity for an acquisition bar.

> Counsel for Plaintiff has acquiesced to the imposition of a patent prosecution bar, and, therefore, apparently agrees that there could possibly be a risk of inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO. Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents.

*E-Contact Technologies, LLC v. Apple Inc.*, No. 1:11-cv-426 (LED/KFG), 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012). In balancing the interests of the case, the Court paid particular interest to the volume of the defendant's confidential information and severity of financial consequences that would flow from disclosure of the same.

> This Court must balance the interests in this case. *Id.* Defendants possess an enormous amount of confidential and proprietary information and the inadvertent disclosure of such information has very significant financial consequences. This Court finds that the potential harm of inadvertent disclosure outweighs the restriction imposed on counsel for Plaintiff. An acquisition bar should be included in the protective order.

*Id.*

Defendants in this case will similarly be required to disclose an "enormous" amount of confidential information that, if used consciously or unconsciously to inform decisions on acquiring patents, would result in "very significant financial consequences." *See id.* This information will include highly sensitive source code and technical documentation relating to the functionalities accused by Plaintiff. Uniloc is a non-practicing, patent assertion entity in the

business of acquiring patents and filing lawsuits to collect licensing revenues.  Here, Uniloc

acquired the asserted patents and sued over a dozen defendants for alleged infringement.  Those

suits will give Uniloc, its counsel, and its experts access to Defendants' highly confidential and

sensitive information that could be inadvertently used to inform future acquisition, licensing, and

litigation decisions.  Because there is significant risk to Defendants should the acquisition bar not

be adopted, Defendants respectfully request that the Court include the acquisition bar in the final

protective order.

**B.      Source Code Note-Taking Computer – Section 11(c)(vi)**

| Plaintiffs' Proposal | Defendants' Proposal |
|---|---|
| The Receiving Party's Outside Counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy or transcribe the Source Code into the notes.  The Receiving Party's expert(s) and/or consultant may use a single computer in the review room for the sole purpose of taking and reviewing his or her notes. Further, the computer shall be non-networked, shall not be connected to the Internet, shall have no camera apparatus, and shall have all input/output connections disabled while taking notes or when present in the Source Code Review Room. The taking of photographs or video shall not be permitted in the Source Code Review Room. | The Receiving Party's Outside Counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes.  Such notes shall only contain the mental impressions or comments of the reviewer regarding the Source Code rather than transcription of the Source Code itself.  The Receiving Party's expert(s) and/or consultant(s) may take notes in a file on either the Source Code computer or a separate computer provided by Producing Party, at the Producing Party's option, subject to the restrictions on copying code set forth herein. To avoid ambiguity, the option to provide a separate computer rather than allowing note taking on the Source Code computer is solely the Producing Party's option, and does not require agreement from the Receiving Party. However, Producing Party must provide one of the two computer options.      Producing Party will provide a program on the note-taking computer that allows Receiving Party to encrypt its notes.  If the Receiving Party's expert(s) and/or consultant(s) choose to do so, Receiving Party's expert(s) and/or consultant(s) will identify the name and location of the encrypted notes file, and Producing Party will, without reviewing the contents of the notes file, provide the encrypted |

| | notes file to the Receiving Party within one (1) business day. |
|---|---|

### 1.    Plaintiffs' Position:

Uniloc has requested that the Protective Order include a provision that would permit Uniloc's expert to bring a non-networked computer, with no camera apparatus or working ports (USB or otherwise), into the Source Code review room solely for the purpose of taking notes in order to prepare his expert report.  Defendants propose instead that Uniloc's expert should record his mental impressions and analysis using a program on each of the Defendants' Source Code Computers, or another computer provided by each Defendant for that purpose, and that Uniloc's expert may receive an encrypted copy of his work product from each Defendant within one (1) business day.  No mention is made by Defendants of the encryption method to be used by any of the Defendants or what would ultimately become of the expert's notes stored on each of the Defendants' computers.

In order to safeguard the confidentiality of Defendants' source code, Uniloc has agreed to several restrictions on its expert's review of Defendants' respective source code.  Uniloc has agreed to these restrictions despite the potential of the restrictions to interfere with the efficiency of expert's inspection and the preparation of his expert report.  These restrictions include, inter alia: (1) prohibiting the expert from transcribing any portion of a Defendant's source code into his notes, even for the purpose of making explicit reference in his notes to a particular section of the produced code; (2) allowing Defendants to visually monitor the expert's activities while he is inspecting Defendants' source code; and (3) agreeing that the expert's computer used for note-taking would have no camera apparatus, no working ports and would not be networked.

Still, Defendants contend these restrictions are not enough, and that they lack adequate assurance that Uniloc's expert would not nevertheless attempt to subvert the Protective Order and take unauthorized portions of Defendants' code—despite his being visually monitored at all times by Defendants, his lacking any technological means to do so and his agreeing to be bound

by a protective order that would entirely prohibit the same.  Defendants instead propose that Uniloc's expert should entrust his protected work product and mental impressions to each of the Defendants, who would not even permit the expert to take his work with him following the review, but would instead send the expert a copy of his own work product within a business day of the inspection.  As such, Uniloc's expert would be entirely unable to access these notes even for the purpose of discussing the results of his source code review privately with litigation counsel, as the expert would also not be permitted to bring his mobile phone into the review room.

Uniloc submits that Defendants' proposed restrictions on protected material are far too one-sided.  Whereas Defendants have insisted upon, and Uniloc has already agreed to, several highly restrictive proposals for protecting Defendants' confidential source code, even where such proposals may potentially interfere with its expert's work, Defendants are not willing to agree to similar protections for Uniloc's protected work product.  Uniloc's proposal for a single computer for its reviewer is a modest one and—absent Defendants' providing assurances or details as to how Uniloc's expert's work product will be handled by each Defendant or protected from unauthorized disclosure—a necessary one.

Uniloc, thus, requests that, subject to all other restrictions in the Protective Order, the Court grant its proposal for a single note-taking computer to be used by its expert during his source code review.

### 2.    Defendants' Position:

Source code warrants special protections because it is highly sensitive and easy to copy. The source code that will be at issue in this litigation is the culmination of years of work, and embodies closely protected trade secrets vital to Defendants' respective businesses.  If code falls into the wrong hands, whether intentionally or unintentionally, it is exceedingly easy to copy that code to other devices and it is impossible to recover the code once electronic copies are unsecurely circulated.   Even Uniloc acknowledges that Source Code warrants special

protections. The parties have agreed on numerous provisions to ensure that Defendants remain in control of their most sensitive technical information, that Source Code Review occurs in a secure, controlled environment, and that Source Code is not copied, printed, or transported without adequate protections. These provisions are standard fare in cases such as these—as evidenced by the fact that Uniloc has recently agreed to the same or similar proposals before this Court. Only one issue related to source code remains outstanding: whether or not Uniloc's experts may bring their own computer into the Source Code Review Room to take notes.

In a recent set of consolidated cases in this Court involving the same plaintiffs and several of the same defendants (Consolidated Case No. 6:15-cv-1168-JRG) (the "Uniloc-Turner Case"), Uniloc agreed to provisions that restricted experts to handwritten notes only. *Uniloc USA, Inc., et al. v. Avaya, Inc.*, Doc. No. 75 at 16, Case No. 6:15-cv-01168-JRG (E.D. Tex. June 17, 2016) ("No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room."). Consistent with Uniloc's prior practice and Defendants' concerns about protecting their most sensitive and confidential information, Defendants proposed similar language in this case.

After more than two months of negotiations, Uniloc rejected the language it had agreed to in the prior Uniloc-Turner Case and insisted that its experts be allowed to take electronic notes on their own computers, ostensibly for the sake of a more efficient review. Defendants objected to Uniloc's proposal because the Defendants cannot police whether a computer brought into the source code review room has been adequately secured to ensure that defendants' most sensitive technical information is protected from potential theft or misuse. Recognizing the potential security risks, Courts in the district have repeatedly entered restrictions on outside electronic devices being brought into the same room as the Source Code Computer. *See Affinity Labs of Texas, LLC v. Samsung Electronics Co., Ltd.*, Doc. No. 115 at 4, Case 1:12-cv-00557-RC (E.D. Tex. Oct 29, 2013) ("Given the highly sensitive nature of the source code, Defendants have met

their burden of showing good cause in prohibiting electronic devices."); *Geotag, Inc. v. Frontier Comms. Corp., et al.*, Doc. No. 582 at 6-7, Case No. 2:10-cv-00570-JRG-MCS (E.D. Tex. Jan. 8, 2013) ("The Court is unconvinced that sufficient review of Defendants' source code requires a cellular telephone or note-taking computer. In light of the highly confidential nature of the source code, allowing these devices within the secure room would significantly increase the possibility of inadvertent disclosure.").

Defendants offered several compromises to resolve this issue.  First, Defendants offered to allow electronic note-taking on a separate computer provided by the Producing Party. Defendants believed this proposal adequately addressed Uniloc's concerns about efficiency, while at the same time ensuring that the additional Source Code protections remained in full force.  Uniloc again rejected Defendants' proposal, this time citing concern over maintaining the confidentiality of work product.  Second, Defendants offered to compromise by providing an encryption program which would ensure that only Uniloc's experts would have access to the electronic notes.  And again, Uniloc refused to budge, insisting without explanation that "encryption" was insufficient to protect the confidentiality of its experts' notes.  Uniloc's latest refusal contradicts the parties' agreed provision regarding electronic copies of Source Code, which requires encryption.  It is telling that Uniloc did not explain how or why encryption is sufficient to protect the underlying Source Code yet somehow insufficient to protect its experts' notes regarding the same Source Code.

Defendants have presented numerous compromises in an effort to address Uniloc's concerns—first allowing electronic notes contrary to Uniloc's prior positions and then by offering to encrypt any such notes to ensure confidentiality. In response, Uniloc has presented only excuses, manufactured disputes, and refused to offer any compromise. Defendants' proposal strikes the appropriate balance between protecting Defendants' most sensitive and important technical information without interfering with Uniloc's prosecution of its case.  In contrast,

Uniloc's proposal contradicts the purpose of the agreed Source Code protections and is inconsistent with its prior practice before this Court.

Dated:  November 2, 2016

Respectfully submitted,

By:  /s/ Michael J. Ercolini
Paul J. Hayes
Kevin Gannon
Michael J. Ercolini
**CESARI AND MCKENNA, LLP**
88 Black Falcon Ave., Suite 271
Boston, MA 02110
Telephone: (617) 951-2500
Facsimile: (617) 951-3927
Email: pjh@c-m.com
Email: ktg@c-m.com
Email: mje@c-m.com

Craig Tadlock
Texas State Bar No. 00791766
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, TX 75093
Tel: (903) 730-6789
Email: craig@tadlocklawfirm.com

ATTORNEYS FOR PLAINTIFFS UNILOC USA,
INC. AND UNILOC LUXEMBOURG, S.A.

By: /s/ C. Matthew Rozier
Clayton C. James
clay.james@hoganlovells.com
Srecko "Lucky" Vidmar
lucky.vidmar@hoganlovells.com
C. Matthew Rozier
matt.rozier@hoganlovells.com
**HOGAN LOVELLS US LLP**
1601 Wewatta Street, Suite 900
Denver, CO 80202
Telephone:     (303) 899-7300
Facsimile:     (303) 899-7333

Alali Dagogo-Jack
alali.dagogo-jack@hoganlovells.com
Helen Y. Trac
helen.trac@hoganlovells.com
**HOGAN LOVELLS US LLP**
Three Embarcadero Center, Suite 1500
San Francisco, California  94111

Telephone: (415) 374-2300
Facsimile: (415) 374-2499

ATTORNEYS FOR DEFENDANT APPLE INC.

By: */s/ Heidi L. Keefe*
Heidi L. Keefe (CA Bar 178960)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Phone: (650) 843-5000
hkeefe@cooley.com

Phillip E. Morton (DC Bar No. 1032243)
**COOLEY LLP**
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
Email: pmorton@cooley.com

Deron R Dacus
Texas Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel:     (903) 705-1117
Fax:    (903) 705-1117
ddacus@dacusfirm.com

ATTORNEYS FOR DEFENDANTS FACEBOOK
INC. AND WHATSAPP, INC.

By: */s/ Jason Woodard Cook*
Jason Woodard Cook
**MCGUIREWOODS LLP**
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
214-932-6418
214-273-7483 (fax)
jcook@mcguirewoods.com

ATTORNEYS FOR DEFENDANTS
BLACKBERRY CORPORATION AND
BLACKBERRY LIMITED

By:  */s/ Yon Sun Sohn*
Ms. Yon Sun Sohn
**BAKER & MCKENZIE LLP**
700 Louisiana, Suite 3000
Houston, TX 77002
713-427-5082
713-427-5099 (fax)
Yon.Sohn@Bakermckenzie.com

Jay Forrest Utley
**BAKER & MCKENZIE LLP**
2001 Ross Avenue, Suite 2300
Dallas, TX 75201
214-978-3036
214-978-3099 (fax)
jay.utley@bakermckenzie.com

ATTORNEYS FOR DEFENDANT LINE EURO-
AMERICAS CORP.

By:  */s/ Jamie Diane Underwood*   .
Jamie Diane Underwood
**ALSTON & BIRD LLP**
The Atlantic Building, 950 F Street, NW
Washington, DC 20004
202-239-3706
202-654-4986 (fax)
jamie.underwood@alston.com

ATTORNEYS FOR DEFENDANT VIBER MEDIA
S.A.R.L.

By:  */s/ Amy E. Hayden*
Amy E. Hayden
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA 94041
650-988-8500
650-938-5200 (fax)
ahayden@fenwick.com

ATTORNEYS FOR DEFENDANT VOXERNET
LLC

By:  */s/Matthew D. Tanner*
Matthew D. Tanner
**WINSTON & STRAWN LLP**
1111 Louisiana Street, 25th Floor
Houston, TX 77002-5242
713-651-2600
713-651-2700 (fax)
MTanner@winston.com

Vivian Kuo
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, DC 20006
202-282-5000
202-282-5100 (fax)
VKuo@winston.com

ATTORNEYS FOR DEFENDANT AOL, INC.

By: */s/  Abran James Kean*
Abran James Kean
**ERISE, IP, PA**
5600 Greenwood Plaza Blvd, Suite 200
Greenwood Village, CO 80111
913-777-5600
913-777-5601 (fax)
abran.kean@eriseip.com

ATTORNEYS FOR DEFENDANT SONY
INTERACTIVE ENTERTAINMENT LLC


By: */s/  Bijal V. Vakil*
Bijal V. Vakil
**WHITE & CASE LLP**
3000 El Camino Real Bldg 5, 9th Floor
Palo Alto, CA  94306
650-213-0303
650-213-8158 (fax)
bvakil@whitecase.com

ATTORNEYS FOR DEFENDANT TANGOME
D/B/A TANGO

By: */s/  Stephen K. Shahida*
Stephen K. Shahida
**GREENBERG TRAURIG, LLP**
2102 L Street, N.W., Suite 1000
Washington, DC 20037
202-331-3100
shahidas@gtlaw.com

ATTORNEYS FOR DEFENDANT SAMSUNG
ELCTRONICS AMERICA, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel of record who have consented to electronic service on November 2, 2016.

<u>/s/     Michael J. Ercolini          </u>